**Gerald TABERS, d/b/a Tabers Used Cars, Appellant,**

v.

**JACKSON PURCHASE PRODUCTION CREDIT ASSOCIATION; Phil Archer; Kennith Green and Pamela Green, Appellees.**

Court of Appeals of Kentucky.

April 29, 1983.

Donald A. Jones, Murray, for appellant.

Ricky A. Lamkin, Miller & Lamkin, Murray, for Jackson Purchase Production Credit Ass'n.

Max W. Parker, Murray, for Phil Archer.

Before HAYES, MILLER and PAXTON, JJ.

MILLER, Judge.

This appeal involves a controversy between a security interest holder (appellee Phil Archer) and a purchaser at a sheriff's execution sale (appellant Gerald Tabers, d/b/a Tabers Used Cars). (Appellees Jackson Purchase Production Credit Association and Kennith Green and Pamela Green were involved in the facts of this situation but have no interest in the appeal).

Jackson Purchase Production Credit Association (hereinafter referred to as Association) obtained a money judgment against Kennith Green in the Calloway Circuit Court. In the same action appellee Phil Archer likewise obtained a money judgment against Kennith Green. The Association held a security interest in a 1979 jeep owned by Kennith Green. Phil Archer held a subordinate security interest in the jeep. It is the security interest of Phil Archer which becomes the focal point of this appeal as there is a question of its validity against appellant Tabers, the sheriff's execution sale purchaser. Here we note that neither Association nor Archer sued to enforce their respective security interest, but rather each obtained a bare money judgment.

Association levied execution on the jeep. Archer's execution was returned "no property found." This is inexplicable in that the jeep was in possession of the sheriff at the time Archer's execution was so returned. In any event the sheriff sold the jeep pursuant to the Association's levy and Archer's execution went for naught. Tabers became the purchaser of the jeep at the sheriff's sale. Since Archer's execution had gone for naught he began proceedings under KRS 426.290(3), as one holding an encumbrance upon the jeep, to have the jeep resold. This set the precise controversy between Archer and Tabers. Tabers asserted that Archer's security interest in the jeep was invalid as to him, a sheriff's execution sale purchaser. We must now decide this question. The lower court held Archer's security interest valid as against Tabers. We affirm.

KRS 426.290 provides:

SALE OF ENCUMBERED PROPERTY UNDER EXECUTION—RIGHTS OF PURCHASER, CREDITOR—REDEMPTION—BOND OF PURCHASER OF PERSONALITY—CONTROL OF COURTS. (1) If the defendant in an execution owns the legal title to any real or personal property on which a bona fide encumbrance created prior to the execution lien exists, the interest of the defendant in the property may be levied on and sold, subject to the encumbrance. (2) The purchaser at the sale shall acquire a lien on such property for the purchase money, and interest at the rate of ten per cent (10%) per annum from the day of sale until paid, subject to any prior encumbrance.

(3) Any other creditor, whether by judgment or otherwise, may, after such execution and sale, by equitable proceedings, subject the encumbered property to sale, and, after satisfying prior liens, have his demand satisfied out of the proceeds of the residue. The proceedings in equity shall be instituted before the purchaser has, by suit, enforced the lien provided for in subsection (2) of this section.

(4) The defendant in the execution may redeem the property sold by paying the original encumbrance, with legal interest thereon, and by paying the purchaser his purchase money, with ten per cent (10%) per annum interest thereon.

(5) The purchaser of encumbered movable property shall, before possession is delivered to him, give an obligation with good surety payable to the encumbrancer and the owner, stipulating that the property shall not be removed out of the county and shall be preserved and forthcoming, unavoidable accidents excepted, to answer the encumbrance, and for redemption, and deliver the obligation to the officer to be returned with the execution.

(6) Courts of equity shall have control of all encumbered property sold under execution, and may make all needful orders for the preservation and forthcoming of the property and its issues and profits, to satisfy the encumbrance and to secure the rights of others.

Under the foregoing statute a purchaser of encumbered property at a sheriff's sale does not acquire title but only acquires a lien. *See Hall v. Commonwealth*, 249 Ky. 290, 60 S.W.2d 625 (1933), and *Commodari v. Hart—Commodari Construction Company*, 262 Ky. 774, 91 S.W.2d 8 (1936). Further a purchaser at a sheriff's sale is not an innocent purchaser simply because he has purchased at a judicial sale or acquired under legal process. KRS 355.9–105(3); 355.3–302(3)(a). A prevalent misconception is that one purchasing at a judicial sale gets something of a superior title simply because of his position. To dispell this misconception, let us say, that there is no mystique about a judicial sale. It does not necessarily "cleanse" title. In fact, judicial sales are wrought with imperfections.

 Although the "lapsed" financing statement may not in itself have been enough to place Tabers on notice of Archer's lien, certainly Archer's appearance in the judicial proceeding from which the sale arose, together with his *nulla bona* execution should have placed him, as a reasonable man, on notice.

We do not deem the trial judge's decision to be clearly erroneous. CR 52.01.

For the foregoing reasons, the judgment of the trial court is affirmed.

All concur.