Case 36.—ACTION BY K. R. McKEE, &c., AGAINST J. E. COOPER AND OTHERS TO ENFORCE A MORTGAGE LIEN ON HORSES.—October 25.

## Cooper v. McKee, &c.

Appeal from Trigg Circuit Court.

THOS. P. COOK, Circuit Judge.

Judgment for plaintiff. Defendant Cooper appeals. Affirmed.

1. Bills and Notes—Pleading—Recital of Note—A petition on a note must allege that by the writing defendant promised to pay plaintiff a certain sum of money at a certain time, or must contain a copy of the note, so that it will show on its face the contract relied on.

2. Pleading—Conclusions of Law—Allegations in a petition that defendant "became indebted" to plaintiff "and executed to him a mortgage" are mere conclusions of law.

3. Chattel mortgages—Enforcement by action—Pleading—In a suit to enforce a chattel mortgage, the mortgage should be copied in the petition, or the effect of the instrument should be set out, as in the case of a note.

4. Pleading—Waiver of Defects—Where defendants file answers which cure defects in the petition, and judgment is rendered on the merits, the defects in the petition are not available on appeal.

5. Chattel Mortgages—Construction—Rights of Mortgagor—Sale of Property—A chattel mortgage authorizing the mortgagor to exchange any horse covered by the mortgage for another horse or horses, and providing that any horse so received in exchange should be subject to the mortgage as if originally embraced therein, did not authorize the mortgagor to sell the horses.

6. Same—Unauthorized Sales—Bona Fide Purchasers—The fact that a purchaser of horses subject to a chattel mortgage bought them at a sale stable does not add anything to his title.

7. Same—Enforcement Against Purchaser—Judgment—In a suit to enforce a chattel mortgage against a purchaser of the mort-

gaged property, a judgment directing the purchaser to deliver the property to the court's commissioner, if it was to be had, and, if not, that he pay its value, which was fixed at a certain sum, was not substantially prejudicial to him.

JOE McCARROLL and DENNY P. SMITH for appellant.

STATEMENT AND POINTS RELIED ON BY APPELLANT.

1. The failure of the plaintiff to sufficiently allege a promise to pay, or to allege any promise at all, makes his petition fatally defective as to defendant Pool, and this defect inures to the benefit of his co-defendant, J. E. Cooper. (Creech v. Abner, 106 Ky., 239, 20 Ky. Law Rep., 1812, and cases cited.)

2. By the terms of the mortgage, which is to be construed in this case, Pool's reserved right to swap or exchange the horses for other horses or property, which should be subject to plaintiff mortgagee's debt, carried with it the right of Pool to sell for cash—cash being considered "other property" in law.

3. The contention of appellee McKee that the purpose of the mortgage was to keep in sight only such visible property as might be the subject of judicial sale is not sound as to those whose rights intervened. (Manly v. Bitzer, 91 Ky., 596, 13 Ky. Law Rep., 166; Ross v. Wilson, 7 Bush, 29; Loth & Haas v. Carty, 85 Ky., 591, 9 Ky. Law Rep., 131. )

4. These horses were owned by Pool, who was the keeper of a livery and sales stable, a factor or commission merchant to all intents and purposes. They were sold in open market at the sale stable of Layne & Moseley, also factors dealing in live stock. Qu. Does not McKee, in taking a mortgage on the stock of a factor like this take it subject to the right of the factor to sell? That would certainly be the rule in case of mortgage against a stock of dry goods owned by a merchant. I submit the same rule ought to apply.

5. But even if the court should construe that the mortgage did not, by its explicit terms, authorize Pool to sell the mortgaged property for cash, yet the evidence abundantly shows that McKee, after its execution, agreed and consented to a sale of the property by Pool. In that case Cooper's title is unimpeachable. (Haney v. Barney, 15 Ky. Law Rep., 142.)

6. It has been settled in this State, by both the Superior and Appellate Courts, that a sale by a factor of mortgaged property does not bind him if ignorant of the mortgage, for a conversion. (Abernathy & Long v. Wheeler, Mills & Co., 13 Ky. Law Rep., 713, 730.) Qu. Upon what principle, then, can the purchaser from a factor who is likewise ignorant of a mortgage, be held

Cooper v. McKee, &c.

to respond for the value of the horses? (Graham & Co. v. Duckwell, &c., 8 Bush, 14.)

7. As this was not an action against J. E. Cooper for trover and conversion, not yet for a specific recovery of the horses, (McKee would have had no right to the latter remedy), and as McKee asked no personal judgment against Cooper, and in no event could have asked for or obtained a personal judgment against him, the judgment of the court fixing an arbitrary valuation on the horses purchased by Cooper, without a scintilla of proof as to their value, and giving a personal judgment against Cooper for such arbitrary valuation, was a gross error, and highly prejudicial to Cooper. No proof as to the value of the horses was taken at all, and the valuation of the appraisers, in the absence of other proof, should have governed, if any valuation could.

8. McKee had a right to sue Cooper for conversion. He waived that, and sued Pool and obtained a specific attachment against the three horses bought by Cooper for a valuable consideration. In such a case it was incumbent on him to show some ground for his attachment, which he wholly fails to do. It was the duty of the trial court, first of all, to ascertain whether McKee had any grounds for his specific attachment. This the court failed to do.

9. The sole ground upon which this specific attachment was procured by McKee against the horses bought by Cooper, was "that his debt against W. H. Pool is just, and that said property, to wit, will be sold, concealed or removed from the State, unless prevented by the court, and that he has reasonable grounds for believing that unless prevented by the court said property will be sold, concealed or removed from the State." He nowhere alleges that he believes it will be sold, etc. I submit that the court should never have based any order or judgment upon this summary and highly provisional proceeding without first ascertaining and adjudicating that the order for it was supported by statutory authority. The order for a specific attachment could only be issued upon an affidavit setting out statutory grounds, and in the absence of this affidavit it was materially prejudicial to Cooper to treat the specific attachment as rightfully issued.

10. Not only was the specific attachment issued without any sort of statutory excuse, but the grounds having been denied, not a word of proof was taken to sustain the attachment. This was also prejudicial to Cooper. The attachment should have been dismissed.

11. Another objection to this judgment is, that even granting that the court could summarily take charge of the horses bought by Cooper and order them delivered to its commissioner for sale, yet the court had no right to anticipate that the horses

Cooper v. McKee, &c.

would not be delivered and fix an arbitrary value on them, and give judgment against Cooper in advance for that valuation, without any evidence in the case bearing on the question.

12. Where a forthcoming bond is given by a claimant of attached property, as in this case, and the property is not produced at the trial of the cause, the court can not summarily refer to its commissioner the right to demand the property and to adjudge against the claimant in advance any value which it may choose to fix in default of surrender. The claimant must be proceeded against either by rule to show cause why he should not be required to pay the value of the property (thereafter to be fixed), or else the plaintiff may resort to his remedy on the bond. If this had been a suit for the recovery of specific property, and the value had been fixed by a jury, such a judgment might be allowable; but certainly not in an equity proceeding upon an unwarranted specific attachment. (Bell v. West. Riv. Imp. & Wrkg. Co., 3 Met., 559; Deposit Bank, &c. v. Thomason, 23 Ky. Law Rep., 1957; Hansford v. Perrin, 6 B. Mon., 597; Connor v. Williams, 17 Ky. Law Rep., 73; Oppenheimer v. Riley, 6 Bush, 119.)

13. Identity in fact and in description is, of course, absolutely essential, as against purchasers for value. Under the terms of this mortgage the right to exchange for other property being conceded by appellee, there was nothing in the description given of the sorrel horse, or any other horse, to warn or notify Cooper that the horses he was buying were originally embraced in the mortgage; but he had a right to assume that they were other horses obtained under the powers retained in the mortgage, and which, as I shall show, were not covered by the mortgage.

14. No remedy is afforded Cooper as against Pool.

ROBERT CRENSHAW for appellee.

The appellee, having extended credit to Pool, to secure himself, took a mortgage on personal property, which was duly acknowledged and recorded in the county where then situated. The mortgagor sold a portion of said property to the appellant in violation of the conditions of the mortgage. Under sec. 249 of the Civil Code the appellee had a right to a specific attachment. As the defendant, Pool, does not appeal, and the appellant only appeals from so much of the order which subjects the horses he purchased of Pool to the payment of the appellee's debt, and so much of the opinion which gives to the appellee judgment for his costs in recovering the stock which appellant had purchased, covered by appellee's mortgage, we perceive no error the court below committed.

Cooper v. McKee, &c.

AUTHORITIES CITED.

Am. & Eng. Ency. of Law, vol. 20, p. 978; Civil Code, sec. 249; Ky. Stats., sec. 889; Herndon v. Campbell, 9 Ky. Law Rep., 681; Am. & Eng. Ency. of Law, vol. 24 (last edition), p. 1,041.

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

K. R. McKee and W. H. Pool, previous to July 23, 1903, were partners in a livery stable at Cadiz, Ky. On that day McKee sold out to Pool for $1,250, and took five notes, each for $250, payable in 6, 9, 12, 15, and 18 months, secured by a mortgage on the horses and vehicles in the livery stable. Pool did not pay his notes, and McKee, on September 22, 1904, filed this suit against him and J. E. Cooper, to whom Pool had sold three of the mortgaged horses. The court enforced the mortgage, adjudging that Cooper took no title to the three horses sold him. Cooper was directed to deliver the horses to the court's commissioner, or, if the horses were not to be had, that he pay their value, which was fixed at $225 for all three of them. From this judgment Cooper appeals.

It is insisted for him that the plaintiff's petition is insufficient. The petition is in these words. "The plaintiff, K. R. McKee, says that on the 23d day of July, 1903, the defendant, W. H. Pool, became indebted to him in the sum of $1,250, and executed to him his five several notes due in 6, 9, 12, 15 and 18 months, respectively, and simultaneously with the making of said debts, and in order to secure the plaintiff, the said W. H. Pool made and executed to him a mortgage on the following personal property: (Here follows description of property.) No part of said debts above have been paid," etc. This petition is bad on demurrer. When a writing is sued on, it must be set out in the pleading in its words, or according to its legal effect; that is, in a suit on a note it

must be alleged that by the writing the defendant promised to pay the plaintiff a certain sum of money at a certain time, or the note must be copied in the petition, so that the petition on its face will show the contract relied on.

The allegation that the defendant became indebted is a mere conclusion of law. So is the allegation that the defendant executed a mortgage; for whether the paper was a mortgage or not is a question of law, to be determined from its terms. Regularly, either the mortgage should be copied in the petition, or the effect of the instrument should be set up as in the case of a note. (Creech v. Abner, 106 Ky., 239, 20 Ky. Law Rep., 1812, 50 S. W., 58, and cases cited.) But no demurrer was filed to the petition, and Pool filed an answer, which cured all the defects in the petition. The answer of Cooper is also to the same effect. After judgment on the merits, the defects in the petition are not available on appeal.

It is insisted for Cooper that by the terms of the mortgage Pool was authorized to sell the mortgaged property. The language of the mortgage relied on is as follows: "It is agreed and understood, and made a part of this mortgage, that the mortgagor hereby reserves the right to swap or exchange any horse herein named for other horse or horses, and any horse or other property received by me in lieu of, or exchange for, any property herein mentioned, said property so received shall take the place of the property herein mentioned that may be so disposed of, and to be covered by this mortgage and subject to the payment of the notes herein mentioned, the same as if originally embraced herein." It is earnestly insisted for appellant that as Pool had the right to exchange the horses or swap them for other property, he was authorized to sell the horses, as a sale is but

an exchange of property for money. This position, while plausible, can not be maintained. It is well settled that authority to sell property is not authority to exchange it for other property. (Woodward v. Jewell, 140 U. S.,247, 11 Sup. Ct., 784, 35 L. Ed., 478, and cases cited.) The rule rests upon the ground that the delegated power must be strictly followed, and applies no less where a sale is made of property when the authority is limited to make an exchange. McKee, having confidence in Pool's judgment of horses, might be willing to risk him to swap off the mortgaged horses for other horses, when he would not be willing to risk him with the power to sell the horses for money, which might be put in his pocket and could not be traced or identified. Money will slip through a man's fingers often when he does not intend to do injustice to the rightful owner. The power to sell for money, and the power to exchange the horses for other horses, were very different things. The former would hazard the security of the mortgagee much more than the latter. The power conferred is not to be extended by construction beyond the fair terms of the instrument. We therefore conclude that Pool was without authority to sell the horses to Cooper under the terms of the mortgage.

It is further insisted for Cooper that McKee consented to the sale of the horses by Pool. On this subject the evidence is conflicting, and we can not say that the chancellor's judgment is against the weight of the evidence, or that under the evidence the chancellor erred in sustaining the specific attachment which McKee had sued out. The fact that Cooper bought the horses, when sold in Hopkinsville at a sale stable, adds nothing to his title. Were the rule otherwise, mortgages on this class of property could always be defeated.

The form of the judgment was not substantially prejudicial to Cooper. It is not a judgment upon the bond which he executed, but is simply a judgment against him.

Judgment affirmed.